IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MAURICIO DASILVA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 4:12-cv-04137-RBP |
| ) | |
| ERIC HOLDER, Attorney General, et. al, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION**

This is an action on a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, in which Petitioner Mauricio DaSilva challenges his detention pending his removal from the United States pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* (Doc.[1] 1 ("Petition" or "Pet.")). Petitioner has been granted leave to proceed *in forma pauperis*. Upon consideration, the court finds that the Petition is due to be summarily denied.

**I.    BACKGROUND**

Petitioner is a native and citizen of Brazil. (Smith Dec. at ¶ 8)[2]. He attempted to enter the United States at Dulles Airport in Washington, D.C., on March 6, 2004, using a fraudulent passport. (*Id*. at ¶ 2). He was arrested by Customs and Boarder Protection officers. (*Id.*) He was subsequently convicted on March 8, 2004, in the United States District Court for the Eastern District of Virginia for visa fraud under 18 U.S.C. § 1546(a).

---

[1]    References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files system.

[2]    Citations to "Smith Dec. at ¶ ___" are to the numbered paragraphs of the declaration of Gerald Smith, ICE Assistant Field Office Director, found in the defendants' response at exhibit 1.

DaSilva was issued a Notice and Order of Expedited Removal on March 31, 2004. (*Id*. at ¶ 4). He was then removed from the United States.

At some unknown time and place, DaSilva illegally reentered the United. States. He was arrested by Massachusetts State Police in Brockton, Massachusetts, for cocaine trafficking. (*Id*. at ¶ 6). The charge was dismissed on December 7, 2011. (*Id*.)

DaSilva was taken into ICE custody and again ordered removed from the United States to Brazil on February 7, 2012. (*Id*. at ¶ 8). ICE requested the necessary travel documents from the Consulate General of Brazil on February 10, 2012. (*Id*. at ¶ 9). DaSilva was served with a Form I-229(a), warning him of the consequences of failing to depart the United States. (*Id*. at ¶ 10). He was interviewed by the Consulate General of Brazil on March 23, 2012. DaSilva refused to sign for his travel document. (*Id*. at ¶ 11). The Consulate General has informed ICE that DaSilva's travel document cannot be issued unless he voluntarily signs for it. (*Id*. at ¶ 12). DaSilva was served with a "Notice of Failure to Comply," informing him of the consequences of not cooperating. (*Id*. at ¶ 13).

On April 20, 2012, DaSilva was given a "Post Order Custody Review" by ICE. A decision continuing his detention was issued. ICE also submitted an assistance request to ICE Headquarters Travel Document Unit. (*Id*. at ¶ 14). On May 7, 2012, another notice regarding the consequences of a failure to depart was provided to DaSilva. (*Id*. at ¶ 15).

On June 12, 2012, DaSilva again was interviewed by the Consulate General of Brazil. DaSilva once again refused to sign for his travel document. (*Id*. at ¶ 16).

In July 2012, ICE submitted another assistance request to the Travel Document Unit. (*Id*. at ¶ 17). DaSilva was served with another notice concerning the consequences of a failure to

comply. (*Id*. at ¶ 18). On August 10, 2012, he was served with another warning concerning the consequences of a failure to depart. At that time, he informed ICE personnel that he would not sign for his Brazilian Travel Document. (*Id*. at ¶ 19).

He was served with additional notices of the consequences of a failure to comply and with warnings concerning the consequences of failing to depart the United States on August 15, 2012, October 3, 2012, October 15, 2012, December 2, 2012, and December 19, 2012. However, DaSilva again told ICE officials that he would not sign for his Brazilian Travel Document on October 3, 2012, and December 2 and 19, 2012. (*Id*. at ¶¶ 20-24).

On December 20, 2012, DaSilva filed the present petition asserting that he is being illegally detained. (Doc. 1). The court entered an order requiring the defendants to appear and show cause why the requested relief should not be granted. (Doc. 2). The defendants filed their response on February 4, 2013. (Doc. 4). DaSilva was afforded an opportunity to respond. (Doc. 5). He filed an affidavit, stating the evidence against him is "fictitious" and cannot be substantiated. (Doc. 6 at 3). He also asserts that "he has sign[ed] and accepted every document given to him by ICE DHS." (*Id*.)

On June 13, 2014, the court entered an order requiring the respondents to provide DaSilva with any necessary forms that he needs to complete and/or sign for his travel document. (Doc. 12 at 2). After doing so, they were required to inform the court whether DaSilva completed the necessary documents. (*Id*.)

On June 20, 2014, the respondents reported to the court that on June 18, 2014, ICE interviewed DaSilva, with the assistance of a telephonic translator who verbally read the contents of the ICE Form I-229(a), Warning for Failure to Depart and Instruction Sheet. (Doc. 14 at 2).

He was then presented with a form from the Brazilian Government authorizing the issuance of a travel document for his removal.  DaSilva "adamantly refused to sign his application for a Brazilian Travel Document."  (*Id*.)  He advised ICE that he believed the form to be fraudulent and he wanted to contact the Brazilian Consulate General to verify the authenticity of the Travel Document application.  On June 19, 2014, ICE emailed the Consulate of Brazil requesting an interview for DaSilva.  (*Id*.)  The Consulate stated that they had the travel document application packet and would speak with DaSilva telephonically.  (*Id*. at 2-3).  On the same day, ICE contacted the Vice Consular for the Consulate General of Brazil.  He telephonically interviewed DaSilva.  (*Id*. at 3).  After the interview, the Vice Consular informed ICE that a travel document could not be issued due to the fact that DaSilva stated that he would not sign for his travel document.  He confirmed this in an email to ICE.[3]  (*Id*.)

     DaSilva filed a response to the respondents' status report to the court.  (Doc. 15).  He states that the respondents have not complied with the court's order and have conducted an illegal electronic surveillance.  Specifically, he states he was brought into a dark room.  He was confused and disoriented, he was not given his *Miranda* rights, and he was not told he was being videotaped.  (*Id*. at 2).  Additionally, according to DaSilva, he was provided a fake Travel Document.  (*Id*.)  He has also filed a motion to suppress the video recordings.  (Doc. 18).

## II.     DISCUSSION

     Under the general habeas statute, 28 U.S.C. § 2241, federal courts have jurisdiction to grant habeas relief to a person who claims he is being held "in custody in violation of the

---

[3]     Counsel for the respondents also informed the court that the June 18 and 19, 2014 events were video recorded.  (Doc. 14 at 3).

4

Constitution or law ... of the United States. 28 U.S.C. § 2241(c)(3). However, the INA provides that the filing of a petition for review in the appropriate court of appeals is "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5).

Petitioner argues that his continued detention violates § 241 of the INA, 8 U.S.C. § 1231, in light of *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment. Section 1231 of Title 8 provides for a 90-day removal period calculated from the time the removal order becomes final, 8 U.S.C. § 1231(a)(1), during which time detention of the removable alien is mandatory. 8 U.S.C. § 1231(a)(2). Section 1231 further provides that a removable alien who is not removed during the 90-day removal period may be granted supervised release. 8 U.S.C. § 1231(a)(3). Further, a removable alien may be detained beyond the 90-day removal period, as follows:

> An alien ordered removed who is inadmissible under [8 U.S.C. § 1182], removable under [8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)].

8 U.S.C. § 1231(a)(6).

In addition, the statute allows that the "removal period shall be extended ... and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The statutory clock of the removal period starts running on the latest of three dates, as follows:

5

>   (i)     The date the order of removal becomes administratively final.
>
>   (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
>   (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

In *Zadvydas,* the Supreme Court construed § 1231(a)(6) so as not to authorize indefinite detention. Rather, the Court concluded that the statute "contain[ed] an implicit 'reasonable time' limitation" subject to federal court review via a § 2241 habeas petition. 533 U.S. at 682. When a removable alien is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Court adopted a six month period of presumptive reasonableness. *Id.* at 701. After the lapse of this six month period, the burden falls to the alien petitioner to show that his removal is not likely to occur in the "reasonably foreseeable future." *Id.*; *Clark v. Martinez*, 543 U.S. 371 (2005). The Court concluded, however, that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. The Eleventh Circuit, applying *Zadvydas*, has stated that to assert a claim an alien must show that six months have lapsed from the beginning of the removal period, and offer evidence showing that there is "no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051-52 (11th Cir. 2002) (per curiam).

With respect to Petitioner's *Zadvydas*-based claims, whether statutory or constitutional in dimension, he has failed to show that he is entitled to relief. It is clear that the United States is diligently pursing his removal. However, the United States cannot successfully obtain DaSilva's

travel documents from Brazil until DaSilva cooperates with authorities. It is DaSilva's lack of cooperation and obstruction of the removal process that has extended his detention. He has been afforded numerous opportunities to effectuate the process, but has declined to do so. Accordingly, he is entitled to no relief in this action.[4]

### III.  CONCLUSION

Based on the foregoing, DaSilva's petition for a writ of habeas corpus is due to be denied and this action dismissed. An appropriate order will be entered.[5]

**DONE**, this the 4th day of September, 2014.

_____
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**

---

[4] The Clerk of the Court is also directed to term DaSilva's motion to suppress (doc. 18) as being moot.

[5] Respondents also correctly argue that the named federal respondents are due to be dismissed as improper parties. *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). However, because the matter is being dismissed on the merits, no further action is required.